## DECISION OF CHIEF JUSTICE LEE.—IN ADMIRALTY.

## THOMAS SPENCER *vs.* WM. BAILEY AND GEORGE S. GILBERT.

The receiving of bills of exchange for supplies furnished in a foreign port, raises a presumption that they were taken as payment therefor ; but that presumption may be rebutted by proof that the bills were not intended to be taken as an absolute payment, and if they are dishonored, they are no bar to a suit upon the original account.

The master has authority to purchase such supplies as are reasonably fit and proper for the ship and voyage, and the furnisher of such supplies is not bound to show that there was a *positive necessity* for such supplies. It is sufficient if there was an *apparent* necessity.

This case came on for final hearing on the 19th inst., and was fully argued, the counsel for the defendants making the following points of law, which, before we proceed to a decree in the matter, it becomes our duty to discuss and settle.

1st. The account of Spencer for supplies furnished to the ship " Walter Claxton" was *fully settled and paid* by the bills of exchange drawn by the master on the owners, Bailey & Gilbert, of San Francisco ; and this settlement is a complete waiver on the part of Spencer of his right to resort to a Court of Admiralty for satisfaction. Courts of Admiralty will not maintain jurisdiction in such cases; and he must resort to the common law-side of this court.

This question of jurisdiction was so fully discussed in the early part of the case, that I deem it unnecessary for me to go into the argument of this point at length, and shall content myself with a brief review of the cases cited in its support.

The case mainly relied upon by the defence to sustain this point is that of Ramsay *vs.* Allegre, (12 Wheaton, R. 611,) but it does not in my opinion shake the well established doctrine that the claims of material men for supplies furnished to a ship, especially in a foreign country, are clearly within the jurisdiction of the admiralty, and suable there. In that case the material man received a promissory note payable in four months, for the amount of his debt, which was for supplies furnished in a home port. The note was not surrendered to the maker, and it does not appear that it was brought into court, but was still outstanding, and perhaps negotiated. If negotiated, the material man could not recover his debt, as the debtor would still be responsible to the holder of the note ; and he ought not to be twice liable for the same debt. (See the opinion of Judge Story in The Brig Nestor, 1 Sumner R. 86.)

" The Supreme Court of the United States in the case of Ramsay *vs.* Allegre declined to go into the question whether the taking of a promissory note of the owner or ship's husband for repairs and supplies was a waiver of a suit in admiralty against him, as the note was still outstanding and not given up, and it has been stated that no opinion was given or framed by the court on that point."

In this case, Spencer furnished supplies to a ship, not in a home port, but in a foreign one, and took the bills of exchange not as an

absolute settlement of his account but as a conditional one; and those bills having been dishonored by the defendants, he treats them as a nullity, though he brings them into court to show that they are still in his possession; and falls back upon his original account and rights, asking this court to enforce his claim in admiralty.   In my opinion he is fairly within the admiralty jurisdiction, for the bills are now in court, and it is clear from the evidence that they have not been paid.   The giving of the bills of exchange was not to be considered as a payment of the account, unless those bills were duly honored, as appears from the evidence of Dougherty and the bills themselves, and upon the dishonor of the bills, the original rights of Spencer revived and were the same as if the bills had never been given.

There is an abundance of authority in support of this doctrine of the non-extinguishment of the original debt by the receiving of bills of exchange, and I know of none to the contrary, unless in cases where there is an express agreement of the parties that the bills shall be taken as a payment of the debt.   In the case of Puckford *vs.* Maxwell, (7 Term R., 52,) Lord Kenyon, Chief Justice, says, " In cases of this kind, if the bill, which is given in payment, do not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and therefore he may consider it as a nullity and act as if no such bill had been given at all." (See Wallace *vs.* Agry, *et al.*, 4 Mason 342; Story on Promissory Notes, § 104; Story on Contracts, § 979.)

" The receiving of bills of exchange for supplies furnished in a foreign port raises a presumption that they were taken as payment therefor, but that presumption may be overthrown by proof that the bills were not intended to be taken as an absolute payment, as in this case, and are no bar to a suit on the original account, when dishonored.   (See The Chusan, 2 Story R. 467; Leland *et al. vs.* The Ship Medora, 2 Woodbury and Minot's R. 101, and the Brig Nestor, 1 Sumner R. 86.)"

It is further contended, however, that a bottomry bond was given in addition to the bills, and that this is strong additional evidence that it was the plain intention of the parties to extinguish the original debt by these bills and bond.

The instrument called a bottomry bond, is not a bottomry bond, strictly speaking, and was not so intended, but is in the nature of a mortgage of the vessel as collateral security to the bills, which Mr. Allen, who was then acting as American Consul, drew up.   He testifies that after Spencer had received the bills for the supplies, he came to him and said some of his friends thought he had gone too far in furnishing supplies on the credit of the owners, and wished some further security, whereupon, he drew up the instrument in question as a mortgage collateral to the bills, as contradistinguished from a strict bottomry bond, which he doubted the power of the captain to execute. The supplies were not furnished with the expectation of such a bond, but in the usual course of such business at this port, on the expectation of drafts on the owners and the usual lien for such supplies on the vessel furnished.   The bond was entirely an after-thought, suggested to the mind of Spencer, after the bills were given, by the fears of his friends, and consequently is worthless as a bottomry bond, the captain having no right to execute it.   Lord Tenterden in his learned

treatise on the Law of Shipping, says, in speaking of bottomry bonds, it is necessary, to the validity of a bottomry bond, that the money should be originally advanced on the credit of the ship. " If it be originally advanced upon the credit of the owner, and such a bond be afterwards given, in consequence of doubt arising as to his responsibility, even before the ship leaves the place of advance, the bond will be invalid." (Abbott on Shipping, 157.)   To render a bottomry bond valid, the money or supplies furnished must be advanced on the faith of the bottom, and must be necessary to enable the vessel to prosecute her voyage.   (Selden *vs.* Hendrickson *et al.*, 1 Brockenborough's R. 396.)   It is not necessary to the validity of a bottomry bond that the bond should be made at the same time the supplies are furnished, but it is necessary that they be advanced upon the faith and with the intention that a bottomry bond shall ultimately be given to secure the payment of them.   (The Virgin, 8 Peter's R., 538.)   The bond cannot affect the jurisdiction.

We now come to the second point raised by the counsel for the defendants, namely: Spencer before he can recover, must show that each article furnished to the ship was *absolutely necessary* to enable her to proceed on her voyage.

I readily accede to the doctrine that the supplies furnished to a vessel should only be such as are proper and necessary to enable her to proceed on her voyage ; but to say that a merchant is bound to see that every article furnished a master on his order is absolutely necessary for the ship, and that when the bills of exchange which have been taken for such supplies are dishonored, and he seeks to assert his claims against the owner, he may be met with a demand for proof of the necessity of each item in his account, and turned out of court if he cannot furnish it, would be going beyond reason, and further than I should be willing to go, unless compelled to it by the highest authority directly in point.   No authorities have been cited by the counsel in support of the rigid rule they contend for, and I am not aware that any such authorities exist.   To hold such a doctrine would be in my opinion equally injurious to the ship-owner and ship-chandler, and utterly unsafe and impracticable.   It would alarm those whose business it is to furnish supplies, and advance money to foreign ships, and the result would be that they would refuse altogether to make such advances, or only do so on being paid in bills at a heavy discount commensurate with the risk taken.   Who would be willing to furnish the masters of whaleships, visiting our port, with supplies or money, if he were compelled on sending his claim to the United States for collection to give positive proof of the necessity of such supplies and money?   The rigid doctrine contended for, would injure all concerned, and most of all the owners.

The owner sends the master abroad as his general agent, in all that relates to the ship under his command, at least so far as the procuring of supplies in a foreign port is concerned, and thereby holds him out to the world as a person entitled to credit; and it seems to me it would be very unjust to allow the owners to repudiate his acts, by saying my agent, the master, had no knowledge of what was necessary and proper for the vessel, and you must prove the necessity by your own clerks or others competent to judge.

But happily the law requires no such proof as is contended for.

The master has the authority to purchase such supplies as are reasonably fit and proper for the ship and voyage, and the furnisher of such supplies is not bound to show that there was a *positive necessity* for such supplies. It is sufficient if there was an *apparent* necessity. What is required of him who makes advances and furnishes supplies is, that he acts in good faith, and does not co-operate willfully in any unnecessary expenditure. This question was most elaborately discussed by Judge Story in the case of The Ship Fortitude, (3 Sumner R., 229,) which was a suit on a bottomry bond, given by the master of the ship at Calcutta, for moneys taken up for the repairs of the ship. After reviewing all the authorities on the subject, he holds the following language : "I have, therefore, no difficulty in holding, that if there is an apparent necessity, at the time, for the repairs and supplies, the creditor, acting with good faith and reasonable diligence, will be justified, whatever may, at a future time and under other circumstances, turn out to be the real state of things." He cites with approbation the language of Mr. Bell, in his Commentaries, who says: " His (the master's) office holds him out as the accredited agent of the owners, on whose authority all repairs, furnishings of naval stores, subsistence or money necessary for the occasions of the voyage, may be contracted for or advanced on the credit of the owners. The only restraint is the necessity on the part of the furnisher or advancer of money to see, that the supply, which the master requires, is justified by at least *apparent* necessity."

The learned judge also cites the case of The Jane, (1 Dods. R., 461, 464,) which was a case of money advanced on a bottomry bond, in which that great admiralty judge, Lord Stowell, says: " The question then is, whether this was a fair transaction. Whether the money was *bona fide* advanced on the representation of the master, that he was in want of money. By the general law, the master has a right to take up money in a foreign port for the use of his ship. As long as he remains the ostensible master, exercising all the functions of that situation, he has the authority attached to it, *ei rei prepositur*. It is not alleged that the master had any personal credit. Had he not resorted to this mode of raising money, the ship might have lain in port, till it perished by decay. I see no reason to suppose the master exceeded his power. It is a power certainly liable to abuse by the extravagance, indiscretion or dishonesty of the master. But the master is a person selected by the owners themselves. They repose that trust in him, and hold him out to others as trustworthy." Again, continues Lord Stowell, " I cannot agree to the doctrine, that the party lending is obliged to see to the application of the money. If there is no collusion; if he has reasonable ground for believing that the money is fairly borrowed; it is a known principle in that case, that no such obligation is imposed upon the lender. The transaction may be fair in all its parts. But taking it to be otherwise; supposing it to be tinged with a shade of dishonesty in the master ; the merchant, if he did not participate in the guilt, could not be affected by it."

The necessity of the supplies in this case has been abundantly proved by several witnesses, and also the reasonableness of the charges made for those supplies. The " Walter Claxton" was sent to this port from San Francisco, (agreeably with an understanding had with one of the owners,) to receive her outfits for a whaling voy-

age, and so far as appears, the plaintiff acted in the best of faith in furnishing her supplies. Again, the bills of exchange given for the goods, recite the fact that they were given for "*necessary supplies*" furnished to the ship; and it seems to me that this statement of the master and agent of the owners, in the absence of any proof of bad faith or collusion on the part of the furnisher, should of itself be sufficient to throw the burden of proof on the owners, to show that they were not necessary. I think it is fairly to be presumed from that statement, that Spencer made all due and reasonable inquiries on the subject, which the case required, and this doctrine finds support, I think, in the ruling of Judge Story, in the case of The Ship Fortitude, (3 Sumner R., 268.) Still, the question of the onus of proof in cases where the captain states the supplies to have been necessary, has not been raised by the counsel, and as it is unnecessary to decide the point in view of the testimony taken, I refrain from expressing any decided opinion thereon. I know as a general rule that it is incumbent on the creditor, where the necessity of supplies is denied, to show not the absolute, but the apparent or presumed necessity of the supplies furnished, but where the master himself states them to be necessary it seems to me that without some proof of bad faith or lack of diligence on the part of the merchant, the *onus probandi* should rest on the owner to show that they were not necessary. However, as I have before said, it is unnecessary for me to give any decided opinion on this point.

My judgment is, that the supplies were necessary, and the bill therefor reasonable; and I do hereby decree to the libellant the amount thereof, with interest, amounting to six thousand four hundred and fifty-nine dollars and eighty-two cents.